**UNITED STATES COURT OF  APPEALS**

**FOR THE FIFTH CIRCUIT**

---

NO. 96-31133

---

DAVID L. HYPES, Individually and on behalf
of his minor child Sarah Hypes, and MEGAN HYPES

Plaintiffs-Appellants

VERSUS

FIRST COMMERCE CORPORATION

Defendant-Appellee

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

February 12, 1998

Before JONES, EMILIO M. GARZA and PARKER, Circuit Judges.

PER CURIAM:

**I.**

**PROCEDURAL HISTORY**

Plaintiff-Appellant David Hypes (hereinafter "Hypes") worked for First Commerce Corporation (hereinafter "FCC") from February of 1993 to December 31, 1994. He was fired ostensibly for excessive absenteeism and tardiness.  During the period of his employment, Hypes developed chronic obstructive lung disease, which he argues precipitated his absences and tardiness.  On August 23, 1995, Hypes filed suit against FCC alleging violations of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*,

1

the Louisiana Civil Rights Act for Handicapped Persons (hereinafter "LCRHP"), La. Rev. Stat. Ann. § 46:2251, *et seq*., the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 623, *et seq*., the Louisiana Age Discrimination in Employment Act (hereinafter "LADEA"), La. Rev. Stat. Ann. § 23:971, *et seq*., and the Family Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. 2601, *et seq*. Hypes also interposed claims for intentional infliction of mental distress and for loss of consortium. On January 19, 1996, the case was assigned a trial date of September 9, 1996.

FCC filed a motion for summary judgment on July 30, 1996. On August 2, 1996, with the trial date just over a month away, Hypes moved for leave to amend the complaint to allege that FCC terminated Hypes to avoid paying long-term disability benefits in violation of Section 510 of the Employee Retirement Income Security Act (hereinafter "ERISA"). 29 U.S.C. § 1140. On August 22, 1996, the Magistrate denied Hypes' motion to amend. The district court granted FCC's motion for summary judgment and judgment was entered thereon on August 30, 1996.

On September 5, 1996, Hypes filed an objection to the Magistrate's denial of leave to file a first amended complaint. On September 16, 1996, Hypes filed a motion to reconsider the judgment dismissing his claims. On October 1, 1996, the district court denied Hypes' objection to the Magistate's denial of Hypes' motion to amend. On October 10, 1996, the district court denied Hypes' motion to reconsider. On October 28, 1996, Hypes filed a notice of appeal asserting the following alleged errors:

1.   **The district court erred by granting summary judgment;**

2.   **The district court erred by upholding the magistrate judge's denial of plaintiff-appellant's motion to amend.**

Since the evidence viewed in the light most favorable to Hypes will only support the conclusion that he was fired due to excessive absence not linked to his disability, and since the proposed accomodations, as a matter of law, are insufficient to allow Hypes to perform the essential functions of the job, we affirm the district court summary judgment. Furthermore, we find no abuse of discretion in the district court's denial of Hypes' eleventh-hour motion to amend. Therefore, we affirm.

## II.

## FACTS

Hypes was hired by FCC in February of 1993, as a loan review analyst assigned to a Consumer Assessment Team in the Independent Review Services Division. He worked in that position until April 27, 1994, when he was reassigned to a Commercial Portfolio Team. This reassignment was initiated by Hypes' immediate team leader, Bill Burnell, and the Independent Review Services Division leader, Kim Lee, ostensibly in response to a pattern of improperly documented absenteeism and tardiness, which naturally led to Hypes' inability to complete reports and projects on time.[1] After his April, 1994, reassignment, Hypes' absenteeism and tardiness

---

[1]Lee and Burnell knew that Hypes' absences were mostly due to illness and were concerned that Hypes had not taken the time to provide proper medical documentation of these absences. During the interview Hypes promised to provide proper medical documentation for further absences or tardiness due to illness.

3

continued without proper documentation. On July 1, 1994, Hypes began to track his own attendance record, which demonstrated that he was absent on July 1, 6, 13, 26, 29 and August, 1 and 5, and worked half days on July 27 and 28 and August 2, 3 and 4.

On August 5, 1994, Hypes was diagnosed with chronic obstructive lung disease. On or about August 11, 1994, Hypes provided FCC with a letter from his physician, Dr. Brooks Emory, advising of Hypes' diagnosis and scheduled treatment beginning on August 12, 1994. Thereafter, Hypes was hospitalized for tests on August 15, 1994. In a statement dated August 25, 1994, Dr. Emory advised FCC that the date for Hypes' release was indeterminate but that the restrictions on Hypes were temporary. This prompted FCC to notify Hypes that he was eligible to receive short-term disability benefits at a rate of 100% of his pay for the period August 8 through 29, 1994. The letter also notified Hypes that time away from work during short-term disability was counted toward the twelve weeks for which he was eligible under FCC's Family Medical Leave Policy, a copy of which was enclosed with the letter. Hypes was also notified by telephone that he could use his vacation pay to cover an additional two weeks of absence through September 9, 1994.

Hypes' medical release from Dr. Emory, dated September 9, 1994, indicated that Hypes was able to return to work on September 12, 1994, to full activity, without restrictions. Hypes returned to work on September 13, 1994. The following day, September 14, Hypes met with Kim Lee and Marilyn Mays, FCC's Employee Relations

**4**

Manager. At that time Hypes was informed that he would be expected to be at work on time, and, if he were medically unable, then the appropriate documentation would be necessary. Hypes expressed his concern that his condition would make it difficult if not impossible to be at work by 8:30 a.m., and therefore, he requested an accomodation, i.e., working without a neck tie and starting work later in the morning. However, since the release from Dr. Emory was without restriction, his request was denied. Hypes was instructed to obtain a revised release which would identify any further limitations. By letter dated September 19, 1994, Dr. Emory advised FCC that travel might be exceedingly difficult for Hypes at that time, but did not identify any restrictions or limitations affecting Hypes' ability to attend work regularly, punctually and in appropriate attire.

In spite of Dr. Emory's conclusion that Hypes should be able to get to work on time and work a full schedule, Hypes subsequently missed nine (9) full days (Sept. 19, 20, 26, 27, Oct. 11, Nov. 14, 15, 16, 30) and seventeen (17) half days (Sept. 21, 22, 28, Oct. 3, 5, 13, 17, 18, 20, 25, 28, Nov. 2, 9, 17, 18, 25, 29). There was no documentation by Hypes of the reason for the absenteeism and tardiness after September 19, 1994. Hypes own notes reflect that in the five month period from July 1 through December 2, 1994, he missed sixteen (16) full days and twenty-three (23) half days of work, exclusive of the twenty-five (25) days he missed while on short-term disability leave. In his deposition testimony, Dr. Emory confirmed Hypes' ability to work a full schedule without

restrictions both before and after the period of Hypes' short-term disability leave. Dr. Emory also testified in his deposition that during an office visit on September 28, 1994, Hypes had complained of difficulty getting started in the morning so that he could make it to work on time. Nevertheless, Dr. Emory apparently believed it was up to Hypes whether to get up an hour earlier so that he could make it to work on time.[2] Therefore, no further restriction was obtained or produced by Hypes following the revised release from Dr. Emory on September 19, 1994, and, contrary to his promise in the April 27, 1993, meeting with Lee and Mays, Hypes provided no medical documentation to explain the absences after September 19, 1994. Because of Hypes' persistent absenteeism and failure to provide medical documentation to support these absences or the need for accomodation, Kim Lee informed Hypes that he no longer had a position in the Independent Review Services Division. The final decision to terminate Hypes was made by Marilyn Mays, and Hypes was removed from the payroll effective December 31, 1994. FCC has continually maintained that Hypes was fired for excessive unexplained absenteeism.

## III.

### Did the district court err by granting summary judgment?

#### A.

#### *Standard of Review*

---

[2]In Dr. Emory's deposition testimony this comment about getting up an hour earlier was made in a cursory, almost off-hand fashion, and does not appear to be a medical assessment of how much additional time Hypes would actually need to get started in the morning because of his condition.

6

"We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court." <u>Cleveland v. Policy Management Systems Corp.</u>, 1997 WL 464657, at *2 (5th Cir. Aug. 14, 1997). If plaintiff lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of a claim or claims, then summary judgment is appropriate against plaintiff on that claim. <u>River Production Co., Inc. v. Baker Hughes Production Tools, Inc.</u>, 98 F.3d 857, 859 (5th Cir. 1996) (citing Fed.R.Civ.P. 56(c)).

## B.

### *Law*

All of the statutory schemes Hypes sued under prohibit intentional discrimination based on a specified motive. The ADA and LCRHP prohibit discrimination in employment against disabled persons, on the basis of a disability, when the disabled person can perform the essential functions of the job with reasonable accomodation, if necessary. 42 U.S.C. § 12101, *et seq.;* La. Rev. Stat. Ann., § 46:2254; <u>Burch v. Coca-Cola Co.</u>, 119 F.3d 305 (5th Cir. 1997) (discussing ADA);<u>Turner v. City of Monroe</u>, 634 So.2d 981 (La. App. 2 Cir. 1994) (discussing LCRHP). The ADEA and LADEA prohibit discrimination in employment on the basis of age. 29 U.S.C. § 623, *et seq.;* La. Rev. Stat. Ann., § 23:972 (prohibiting employers from taking various discriminatory actions against employees "because of such individual's age"); <u>Price v. Marathon Cheese Corp.</u>, 119 F.3d 330, 336 (5th Cir. 1997) (ADEA). The FMLA prevents employers from discriminating against employees for

requesting leave authorized by the Act. 29 U.S.C. § 2617 (FMLA – provides for private right of action by employee against employer who "interfere[s] with, restrain[s], or den[ies] the exercise of ... any right provided under this subchapter.").

Under each of these statutory anti-discrimination schemes, the employee bears the burden of proving that the employer's actions were motivated by the considerations prohibited by the statute. Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995) (in ADA cases "employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion"); Turner v. City of Monroe, 634 So.2d 981, 985 (La. App. 2 Cir. 1994) (describing the plaintiff's burden of proof under the LCRHP); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1504-05 (5th Cir. 1988) (describing the application of the *McDonnell Douglas-Burdine* method of shifting burdens to suits under the ADEA, where the ultimate burden of proof remains with plaintiff); DeLoach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir. 1990) (applying the *McDonnell Douglas-Burdine* method to suits brought under the LADEA); Oswalt v. Sara Lee Corp., 889 F. Supp. 253, 259 (N.D.Miss. 1995) (holding that under the FMLA the plaintiff must prove an adverse employment decision because of a request for leave, which may be achieved by using the *McDonnell Douglas-Burdine* formula). Therefore, if Hypes fails to prove that his termination was motivated by his age, disability, or request for leave, there is no liability under the ADA, LCRHP, ADEA, LADEA or FMLA.

*Analysis*

The evidence in the instant case, viewed in the light most favorable to Hypes, will only support the conclusion that FCC fired him due to excessive absence. Given that the evidence conclusively proves that Hypes was fired for excessive absence, no reasonable juror could conclude that FCC fired Hypes because of his age or any request for leave under the FMLA. Therefore, summary judgment was proper on Hypes' claims under the ADEA, LADEA and FMLA.

Nevertheless, if Hypes' excessive absences were linked to his disability, and FCC knew it when they fired him, we might say that excessive absence is a pretext or even a proxy for Hypes' disability, and he would have an arguable claim under the ADA and LCRHP. However, even if we accept that Hypes was fired because of his disability, he is still not "otherwise qualified" and therefore may not prevail on his ADA and LCRHP claims. 42 U.S.C. § 12112(a); La. Rev. Stat. Ann., 46:2254(A); <u>Daigle</u>, 70 F.3d at 396 (ADA); <u>Turner</u>, 634 So.2d at 987 (LCRHP).[3] To be otherwise qualified to perform the job and able to state a claim under the ADA and LCRHP, Hypes must be able to perform the essential functions of the job with or without reasonable accomodation. 42 U.S.C. § 12111(8); La. Rev. Stat. Ann., 46:2253(4)(a).

Hypes was not "otherwise qualified" for his job because: 1) as

---

[3]Unlike the LCRHP, the ADA does not use the terminology "otherwise qualified". Rather, the ADA protects the "qualified individual with a disability". 42 U.S.C. § 12112(a). However, the difference is semantic only, and does not effect our analysis, which is the same under the ADA and LCRHP.

the district court correctly concluded, it was an essential function of his job, as a member of a team, that Hypes be in the office, regularly, as near to normal business hours as possible, and that he work a full schedule; and 2) even with the requested flex-time accomodation, Hypes could not arrive at work early enough or often enough to perform the essential functions of the job. The evidence demonstrates that this was not the sort of job which could be done at home. Hypes' job required him to review various confidential loan documents, which could not be taken from the office. "An employer is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced." Vande Zande v. State of Wis. Dept. of Admin., 44 F.3d 538, 544 (7th Cir. 1995). Furthermore, he was a part of a team and the efficient functioning of the team necessitated the presence of all members. "[T]eam work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." Id. at 544. Therefore, it was critical to the performance of his essential functions for Hypes to be present in the office regularly and as near as possible to normal business hours.

Other courts are in agreement that regular attendance is an essential function of most jobs. Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) ("[a]n essential element of any government job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time") (quoting Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994)). See also

Tyndall v. Nat'l Educ. Centers, Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) ("a regular and reliable level of attendance is a necessary element of most jobs"); Law v. United States Postal Serv., 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) (holding that "an agency is inherently entitled to require an employee to be present during scheduled work times, and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation"); Walders v. Garrett, 765 F. Supp. 303, 309-10 (E.D. Va. 1991) (holding that "employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity[;] the necessary level of attendance and regularity is a question of degree depending on the circumstances of each position, ... however, ... some degree of regular, predictable attendance is fundamental to most jobs"), aff'd, 956 F.2d 1163 (4th Cir. 1992); Santiago v. Temple Univ., 739 F. Supp. 974, 979 (E.D. Pa. 1990) ("attendance is necessarily the fundamental prerequisite to job qualification"), aff'd, 928 F.2d 396 (3d Cir. 1991).

Although Hypes proposed an accomodation of flex-time, that accomodation still would not enable Hypes to perform the essential functions of his job. The evidence, viewed in the light most favorable to Hypes, at best only establishes that he needed an additional hour in the morning to get to work. While Hypes was still with FCC, Dr. Emory identified only one limitation resulting from Hypes' disability: inability to travel. Hypes' told Lee and Mays that he might have difficulty coming to work at 8:30 a.m. because of his disability, however, he did not identify any

**11**

specific accomodation for that limitation, i.e., one hour, two hours or more. "When the nature of the disability, resulting limitations, and necessary accomodations are uniquely within the knowledge of the employee and his health-care provider, a disabled employee cannot remain silent and expect his employer to bear the initial burden of indentifying the need for, and suggesting, an appropriate accomodation." Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996). It was only after the fact, during his deposition testimony that Dr. Emory made the off-hand remark that Hypes needed an additional hour to get to work. FCC was clearly not in possession of that information while Hypes was still employed by them. On the contrary, the indication they received from Dr. Emory was that Hypes had no limitations other than traveling.

Nevertheless, even if we assume that FCC knew Hypes needed an additional hour to get to work, and that Hypes had requested a flex-time accomodation of one hour, Hypes still is not otherwise qualified to perform the essential functions of the job. The evidence shows that Hypes regularly came to work as late as 10:30 a.m. to 1:00 p.m., and, almost as often, he failed to come to work at all. Therefore, the requested flex-time accomodation of one hour would rarely be enough to actually ameliorate Hypes's tardiness and absenteeism. Since regular attendance is an essential function of Hypes' job, and since he could not be expected to have regular attendance even with the requested flex-time accomodation, Hypes is not "otherwise qualified" to perform

**12**

this job and thus may not prevail under the ADA or LCRHP.

## IV.

## Did the district court err by upholding the magistrate judge's denial of plaintiff-appellant's motion to amend?

### A.

### *Standard of Review*

We review the district court's denial of Hypes' motion to amend the complaint for abuse of discretion. <u>Fitzgerald, v. Secretary, United States Dep't. of Veterans Affairs</u>, 1997 WL 473337 at *6 (5th Cir. Sept. 5, 1997) (<u>citing</u> <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).

### B.

### *Law*

This court has recognized that a district court does not abuse its discretion by refusing to allow an eleventh-hour amendment. <u>Banc One Capital Partners Corp. v. Kneipper</u>, 67 F.3d 1187, 1199-1200 (5th Cir. 1995) (holding that district court did not abuse its discretion by refusing amendment sought ten months after amendment deadline, where new matter could have been discovered and asserted earlier). The amendment sought in this case came seven months after the amendment deadline, eleven months after the original complaint was filed and one month before the trial date, which by that time had been scheduled for almost eight months. We need not reach the question whether that delay and proximity to the scheduled trial date justified refusing the amendment, because, even if the amendment had been allowed, summary judgment would have been required on the ERISA claim as well.

13

Section 510 of ERISA provides in relevant part that:

> It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the Plan ...

"To recover under section 510, a plaintiff 'need not show that the sole reason for his termination was to interfere with pension rights; however, the plaintiff must show that the employer had the specific intent to violate ERISA.'" Olitsky v. Spencer Gifts, Inc., 964 F.2d 1471, 1478 (5th Cir. 1992) (quoting Clark v. Resistoflex Co., Div. of Unidynamics Corp., 854 F.2d 762, 770 (5th Cir. 1988). See also Hines v. Massachusetts Mut. Life Ins. Co., 43 F.3d 207, 209 (5th Cir. 1995) ("[a]n essential element of a Section 510 claim is proof of defendant's specific discriminatory intent"). As we have previously explained, the evidence in this case will only support the conclusion that FCC fired Hypes because of excessive absenteeism. Therefore, the evidence will not support the conclusion that he was fired because of his potential eligibility for long-term benefits under the pension plan any more than the conclusion that he was terminated due to his age, disability or eligibility for leave under FMLA.

This court has held that, when deciding whether an amendment should be allowed, the district court may consider the futility of the amendment. Ashe, 992 F.2d at 542 (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). It would be nonsensical for this court to remand this matter to the district court so that Hypes might amend his complaint to add a

claim under Section 510 of ERISA, only to have the district court properly grant summary judgment on that claim. Therefore, our conclusion that FCC fired Hypes due to excessive absence, and the concomitant effect of that finding on Hypes' ERISA claim, renders the amendment question moot.

<strong>V.</strong>

<strong>CONCLUSION</strong>

Hypes cannot succeed on his claims under the ADEA, LADEA or FMLA, because the evidence clearly establishes that Hypes was fired for excessive absenteeism, not because of his Age or requests for leave. Furthermore, even accepting that excessive absenteeism is a pretext for Hypes' disability, Hypes is not "otherwise qualified" to perform the essential functions of the job, because the requested flex-time accomodation would not be enough to ensure Hypes' regular and predictable presence at work. Hence, Hypes cannot recover under the ADA or LCRHP. Finally, the district court did not err in refusing to allow Hypes' eleventh-hour amendment, because the newly plead ERISA claim would have been subject to summary judgment as well. Therefore, we affirm.

AFFIRMED.