**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-31251

JOHN M. ROPER,

Plaintiff-Appellant,

VERSUS

EXXON CORPORATION; ET AL,

Defendants,

EXXON CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
(97-CV-1971-T)

October 6, 1999

Before DUHÉ, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[1]

John M. Roper ("Roper") appeals the grant of summary judgment in favor of Exxon Corporation ("Exxon") on several grounds. Roper also argues that Exxon improperly withheld evidence during discovery which pursuant to Fed. R. Civ. P. 37(c) prohibited its use. We affirm the district court's grant of summary judgment and its admission of the evidence in question.

I. FACTS AND PROCEEDINGS

Exxon hired Roper in 1974 as an in-house attorney in its

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Houston law department.  At the time, Roper was 33 years old. Exxon in 1975 reassigned Roper to its Southeastern Production Division in New Orleans where Roper remained until his January 30, 1997 termination.

The Exxon Law Department annually evaluates its employees through comparative rankings based on their relative contributions and performance among the other attorneys in their rank group.  In 1993, Exxon adopted the Continuous Performance Improvement guidelines.  When employees rank in the bottom 10 percent under these guidelines, Exxon advises them of their standing and provides special management attention to rectify their poor showing. Under the guidelines, Exxon may reassign or terminate these employees if they fail to show sustained improvement.

In December 1994, when Roper was 53 years old, his supervisor, Bill Hurt ("Hurt") told him that he was ranked at the bottom of his rank group.  The following year Exxon again ranked its house counsel and Hurt informed Roper in December 1995 that he would be terminated because of his low ranking.  Roper asked Hurt if he could remain employed until he was eligible to retire with annuitant status at age 55. Hurt said that was acceptable. On May 22, 1996, after Roper received another low ranking, the head of Exxon's litigation section, John Tully, informed Roper that he would be terminated on or after November 1, 1996, when Roper would qualify for annuitant status.  Overall, under the CPI guidelines, Exxon ranked Roper in the bottom 10 percent of his rank group from 1994 to 1996.  Exxon later granted Roper's subsequent request to

2

remain employed for tax reasons until January 1997. He officially left Exxon on January 30, 1997.

On June 25, 1997, Roper sued Exxon under (1)The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; (2) Louisiana's Age Discrimination Act ("LADEA"), La. Rev. Stat. Ann. § 23:971 et seq. (West 1998)[2], and Louisiana's Commission on Human Rights Act ("LCHRA"), La. Rev. Stat. Ann. § 51:2231 et seq. (West 1999); (3) La. Civ. Code Ann. art. 2315 (West 1997); (4) Section 510 of the Employee Retirement Income and Security Act ("ERISA") 29 U.S.C. § 1140; and (5) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

The district court granted Exxon summary judgment on all grounds. Specifically the District Court determined that (1) Roper's evidence of age discrimination did not create a factual issue under the ADEA; (2) alternatively, assuming a factual issue did exist, Roper's evidence did not create a fact issue whether Exxon's non-discriminatory reason for terminating Roper was pretextual or false; (3) Roper's Louisiana discrimination claims and Article 2315 claim were time-barred, and Article 2315 did not provide relief for employment discrimination; (4) Roper's evidence did not create a factual issue concerning whether Exxon intended to interfere with his benefit rights as required for an ERISA claim; and (5) Roper's evidence did not create an issue of fact as to whether he engaged in protected conduct under the FLSA.

---

[2] Since the filing of this lawsuit, the Louisiana Legislature has consolidated the LADEA into the Louisiana Employment Discrimination Law, La. Rev. Stat. Ann. § 51:2231 (West 1999).

3

Roper also contends that the district court improperly allowed Exxon to rely on evidence of ranking lists which Exxon failed to disclose during discovery pursuant to Fed. R. Civ. P. 37(c).

II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing the facts and inferences in the light most favorable to the party opposing the motion. See Hall v. Gillman, Inc., 81 F3d 35, 36-37 (5th Cir. 1996). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review a district court's decision on a discovery matter for abuse of discretion. See United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir. 1998).

III. DISCUSSION

A. ADEA

To survive summary judgment, Roper must state a prima facie case of age discrimination under 29 U.S.C. § 623(a)(1). The parties agree that Roper was: (1) within the protected age group; (2) discharged; and (3) qualified for the position. The parties dispute whether Roper has created a fact issue that either (i) he was replaced by someone outside the protected class, (ii) replaced by someone substantially younger, or (iii) otherwise discharged because of his age. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957 (5th Cir. 1993).

4

We find that Roper has not created an issue of material fact. First, Exxon did not replace Roper with someone outside the protected class. Instead, Exxon assigned his workload to co-workers and outside counsel - many of whom where not substantially younger than Roper. Second, Roper has not shown a pattern of discriminatory conduct by Exxon that suggests he was terminated because of his age. Further, Exxon's non-discriminatory reason for terminating Roper was not pre-textual. In fact, the record conclusively shows that Roper was terminated because of his lack of interpersonal skills.

B. LADEA, LCHRA and Article 2315

Because we determined that Roper's evidence does not create a fact issue concerning his ADEA claim, Roper's LADEA claim must also fail since we apply the ADEA's standards in resolving claims under Louisiana's employment discrimination statutes. See Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998). In addition, Roper's LADEA, LCHRA and Article 2315 claims are time barred because they were not brought within one year of notification of his termination. Jay v. International Salt Co., 868 F.2d 179, 180-81 (5th Cir. 1989). Roper filed suit on June 25, 1997. He contends that the prescriptive period for his claims should run from the last notification of his termination, January 6, 1997, because Exxon's multiple postponements of his date of termination rendered the initial notification vague and indeterminate. However, Roper admits that Exxon notified him on May 22, 1996, that he would be terminated on or after November 1996. Moreover, Exxon

5

delayed Roper's termination date to accommodate his annuitant status and assist him in obtaining a tax advantage. The evidence clearly establishes that Roper filed suit more than one year after Exxon notified him that his termination was inevitable.[3]

C. ERISA

Roper argues that the district court erred in determining that his evidence did not create a fact issue concerning whether Exxon specifically intended to interfere with his benefit rights as required by Section 510 of ERISA. See Hines v. Massachussetts Mut. Life Ins. Co., 43 F.3d 207, 209 (5th Cir. 1995) (holding an essential element of a Section 510 claim is proof of defendant's specific discriminatory intent). Roper offers no evidence arguing only that resolution of this issue on summary judgment is inappropriate because it turns on a party's state of mind. A party cannot raise a fact issue simply by stating the defendant's state of mind is at issue. See McGann v. H&H Music Co., 946 F.2d 401, 408 (5th Cir. 1991).

D. FLSA

Finally, Roper contends that the district court improperly found no issues of material fact regarding his FLSA claim. The FLSA provides that it is unlawful: "to discharge or in any other

---

[3] Some courts have determined that the prescription period commences on the date of termination and not on the date of notice of termination. See, e.g., Harris v. Home Sav. and Loan Ass'n, 663 So.2d 92, 94-95 (La. App. 3d Cir. 1995) (LADEA claim) and Brunett v. Dept. of Wildlife and Fisheries, 685 So.2d 618, 621 (La. App. 1st Cir. 1988) (LADEA claim). However, unlike Harris and Brunett where the plaintiffs received a vague and indeterminate notice of termination, Exxon clearly told Roper far in advance that he would be terminated on a specific date.

manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Roper argues that he notified Exxon on December 14, 1995, that he was considering filing a discrimination claim. However, he says Exxon did not notify Roper of his termination until May 22, 1996. The record conclusively shows otherwise. Roper initially did inform Exxon in a memorandum to Hurt that he was considering "asserting claims and pursuing remedies under appropriate federal and state statutes" on December 14, 1995. (R. at 705). However, in that same memorandum, Roper refers to "the company's decision to terminate [him] . . . ." (R. at 705). Roper knew of his imminent termination before he threatened legal action against Exxon. Therefore, the district court correctly dismissed his FLSA claim.

E. Exxon's Withholding of Evidence

Roper contends that Fed. R. Civ. P. 37(C)[4] prohibits Exxon's use of information from certain ranking lists because Exxon failed to disclose this information to Roper. While Exxon produced ranking lists from 1995-97, it stated that it had no lists earlier than 1993 and would produce only the lists it could locate.

---

[4] Fed. R. Civ. P. 37(c)(1) provides:
A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a . . . hearing or on any motion any witness or information not so disclosed.

However, in support of its Motion for Summary Judgment, Exxon submitted the affidavit of Mary Randolph who referred to data in her affidavit from ranking information as early as 1987.

We do not find that the district court abused its discretion in permitting Exxon to use such evidence in its Motion for Summary Judgment. In fact, there is ample evidence in the record to suggest that Roper had access to the information he argues he did not receive. Exxon did disclose Roper's rank group percentile for salary budget years 1988-1997 (R. at 569). Moreover, if Roper had more thoroughly deposed Exxon representatives regarding this issue he would have discovered that even though Exxon's rank groups change from year to year, the company maintains historical rank information on an employee by employee basis. In conclusion, the discovery material Roper alleges Exxon withheld was available to Roper although in a different composition than what he was seeking.

AFFIRMED.