# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40458

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2016

Lyle W. Cayce
Clerk

BRIAN WATERMAN,

      Plaintiff - Appellant

v.

MCKINNEY INDEPENDENT SCHOOL DISTRICT,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-170

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

The McKinney Independent School District ("MISD") chose not to renew Plaintiff-Appellant Brian Waterman's teaching contract due to allegations that he behaved inappropriately toward his coworkers. Waterman sued MISD, contending that his non-renewal was retaliation for exercising his First Amendment rights to report certain of MISD's practices. After the jury returned a verdict in favor of MISD, Waterman moved for a new trial,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40458

asserting, *inter alia*, that the district court deprived him of a fair trial. The district court denied Waterman's motion for a new trial. Finding no reversible error in the district court's pretrial and evidentiary rulings or in its conduct of the trial, we AFFIRM.

I.

During the 2010-2011 school year, Waterman taught at MISD's Collin County Juvenile Center, County Residential Center (the "CRC"), a juvenile detention facility. Minors incarcerated at the CRC are taught by MISD teachers in common areas outside the jail cells called "pods." In February 2011, one of Waterman's coworkers, Natasha Knapton, filed a sexual harassment complaint against Waterman with the CRC's principal, Cynthia Morton. According to the complaint, on February 18, 2011, Waterman brought Knapton to a pod where he was teaching an all-male class and allowed the class to make sexually offensive comments. Knapton complained that Waterman participated in the behavior and that she felt embarrassed and uncomfortable. Pursuant to MISD policy, Morton investigated Knapton's complaint.

As part of the investigation, Morton interviewed Knapton and Waterman and received statements from both employees. Morton also reviewed a video recording of the incident and took statements from other witnesses. Based on her investigation, Morton determined that Waterman had harassed his coworkers and provided these findings to Dr. Jay Davis, MISD's Chief Human Resources Officer and Title IX Coordinator.

Davis performed a follow-up investigation, during which Waterman was placed on paid administrative leave. At the conclusion of the investigation, Davis agreed with Morton's findings and recommended to MISD Superintendent Dr. J.D. Kennedy that Waterman's contract not be renewed. Kennedy accepted Davis's conclusion and recommended Waterman's non-renewal to the MISD Board of Trustees (the "Board"). After being notified of

No. 15-40458

the Board's intent to non-renew his contract, Waterman appealed the proposed non-renewal under Section 21.207 of the Texas Education Code. Pursuant to this provision, Waterman received an evidentiary hearing before the Board.[1] After the hearing, the Board voted to non-renew Waterman's contract. Waterman appealed this decision to the Texas Commissioner of Education, who affirmed the non-renewal.

At some point prior to the incident in the pod, Waterman reported the following improper practices at the CRC to Morton: (1) "social grading" of the CRC's GED students without testing; (2) inflation of student enrollment to receive increased funding; (3) deprivation of unencumbered lunch periods; and (4) mishandling of the Teacher of the Year Award. Waterman contends that his non-renewal was actually based on these previous reports rather than the purported harassment.

Waterman filed suit against MISD, asserting § 1983 claims under the First, Ninth, and Fourteenth Amendments. After MISD moved to dismiss the complaint under Rule 12(b)(6), the magistrate judge recommended that Waterman's Ninth and Fourteenth Amendment claims be dismissed. The district court adopted this recommendation, leaving only Waterman's First Amendment claim. The case proceeded to a jury trial. After the final pretrial conference, Waterman sought leave to amend his complaint to add a Fourteenth Amendment liberty interest claim. The district court denied leave to amend. A three-day trial resulted in a jury verdict in favor of MISD. Waterman moved for a new trial, and the district court denied the motion.

Waterman now appeals, bringing a laundry list of challenges to the denial of his motion for a new trial, including that the district court (1) erred

---

[1] Waterman's counsel was unable to attend the hearing and participated by phone.

No. 15-40458

in denying leave to amend the complaint, (2) erroneously excluded relevant evidence, and (3) deprived him of a fair trial through biased conduct.

## II.

Waterman's first asserted ground for a new trial is that he should have been allowed leave to amend his complaint to add a Fourteenth Amendment liberty interest claim. We review the district court's denial of a motion to amend the complaint for abuse of discretion. *Cambridge Toxicology Grp. v. Exnicios*, 495 F.3d 169, 177 (5th Cir. 2007). Generally, "a district court does not abuse its discretion by refusing to allow an eleventh-hour amendment." *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 728 (5th Cir. 1998).

The district court did not abuse its discretion in denying Waterman leave to amend the complaint. The court's scheduling order set December 24, 2013, as the deadline for Waterman to file amended pleadings. Nevertheless, on September 28, 2014, just two days before jury selection was to begin, Waterman sought leave to amend his complaint to assert a liberty interest claim. Waterman did not attempt to add this claim until nearly nine months after the amendment deadline had passed. This delay is inexcusable, as he could have asserted the claim much earlier: Waterman's liberty interest claim is that he was deprived of a meaningful name-clearing hearing, an argument that he raised in replying to MISD's motion for summary judgment on March 31, 2014. Waterman fails to explain why he waited nearly six months after presenting the argument—and until the eve of trial—to attempt to add the claim. Waterman's delay and the close proximity to the trial date justified refusing the amendment. *See Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1199–1200 (5th Cir. 1995) (finding no abuse of discretion in district court's refusal to allow an amendment sought ten months after the amendment deadline, particularly where the new issue could have been discovered and asserted earlier); *see also Hypes*, 134 F.3d at 728.

4

No. 15-40458

Waterman also argues that Rule 15(a)'s liberal standard should apply where leave to amend is sought before the entry of any pretrial orders. We similarly reject this contention. As we have previously explained, Rule 16(b), rather than Rule 15(a), "governs amendment of pleadings after the expiration of a scheduling order deadline and requires a showing of good cause to amend the order." *Cambridge Toxicology Grp.*, 495 F.3d at 177. Thus, "[a]s to post-deadline amendment, a party must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (citation and internal quotation marks omitted). Waterman cannot show good cause: he waited until the eve of trial and offered no explanation for his failure to amend earlier. The district court thus did not abuse its discretion in refusing the amendment. *See id.* (finding no abuse of discretion in denying amendment where plaintiff, *inter alia*, "offered no explanation for her untimely request").

The district court did not abuse its discretion in denying Waterman's motion for a new trial on this basis.

### III.

Waterman next contends that he is entitled to a new trial because (1) the district court improperly excluded admissible evidence, and (2) the district court's purported bias and partiality deprived him of a fair trial. We disagree.

### A.

We turn first to Waterman's evidentiary challenges, where he largely asserts that the district court erred in granting a number of MISD's motions in limine and in excluding relevant evidence. "Generally, any error in admitting or excluding evidence is not grounds for a new trial." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012) (citing Fed. R. Civ. P. 61).

5

No. 15-40458

"We review the admission or exclusion of evidence for abuse of discretion."[2] *Id.* Even if the district court's evidentiary ruling is an abuse of discretion, it is subject to harmless error analysis and does not justify reversal "unless it affected substantial rights of the complaining party." *Id.* (citation and internal quotation marks omitted). "A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). Similarly, "[t]he grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005).

1.

We begin with the challenged evidence regarding Knapton. Waterman first contends that the district court erred in excluding evidence of a video of CRC students produced by Knapton that was posted on YouTube and shown at the Teacher of the Year Ceremony, because the evidence was relevant to show Knapton received preferential treatment. But, of course, "even relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Jackson*, 549 F.3d 963, 978 (5th Cir. 2008) (quoting Fed. R. Evid. 403). Here, the district court, noting that the video was made after Knapton's internal complaint, found that its "minor" probative value was outweighed by the danger of confusing the issues and misleading the jury. We cannot say that this was an abuse of discretion.

---

[2] MISD's argument that Waterman failed to preserve any challenges to the motions in limine by making no offer of proof at trial is meritless. A pretrial objection is sufficient to preserve error for appellate review so long as the court rules definitively on the record. *See United States v. Lewis*, 796 F.3d 543, 545 n.6 (5th Cir. 2015) (citing Fed. R. Evid. 103(b)).

No. 15-40458

Waterman next argues that the district court erred in granting MISD's motion in limine excluding evidence that Knapton allowed "contraband such as magic markers in the POD area of the CRC," because such evidence is relevant to a pretext inquiry and shows MISD's failure to discipline other employees. *See Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 367 (5th Cir. 2014) (noting that "differential treatment of similarly-situated employees can show pretext"). This argument is without merit. First, the district court required Waterman to show, outside the presence of the jury, how Knapton's alleged behavior was similar conduct of a similarly situated employee. Waterman made no such attempt at trial. Second, Waterman still fails to explain how he and Knapton were similarly situated employees and thus has failed to show the relevance of the evidence. *See Toronka v. Cont'l Airlines, Inc.*, 411 F. App'x 719, 723 (5th Cir. 2011) ("That employees' situations must be nearly identical means, *inter alia*, that the misconduct they engaged in must be nearly identical."). The district court did not abuse its discretion in granting this motion in limine.

Waterman's next assertion is that the district court committed reversible error in granting MISD's motion in limine to exclude evidence that Knapton used foul language. This contention fails to clear a similar hurdle. In granting MISD's motion, the district court stated that Waterman would need to explain at trial, outside the presence of the jury, how the evidence was relevant. Because Waterman did not attempt to make this showing at trial, he cannot show that the grant of the motion in limine prejudiced him. *See Hesling*, 396 F.3d at 643–44.

Finally, Waterman challenges the district court's exclusion of any hearsay statements about "what others have heard or said about Knapton . . . unless some exception to the rules can be shown outside the presence of the jury." Waterman's apparent contention is that this evidence

was admissible to attack Knapton's character for truthfulness and to show that she was not actually upset by the CRC students' sexually offensive comments in the pod.  First, the district court did not abuse its discretion in excluding hearsay statements that suggest that Knapton was not sensitive to inappropriate comments.  More importantly, however, Waterman was not prevented from otherwise introducing proper reputation or opinion testimony to undermine Knapton's character for truthfulness.  Rather, the district court's ruling was premised on the fact that Waterman could not rely on hearsay statements suggesting sexual predisposition to impeach Knapton's character.  This exclusion was proper.  *See* Fed. R. Evid. 412.

2.

We turn next to the challenged evidence regarding Morton.  Waterman contends that he should have been allowed to attack Morton's credibility through evidence that she committed three previous policy violations: (1) failure to list her termination from another school district on her MISD employment application; (2) appointment of administrative interns without proper authority; and (3) authorization of the YouTube video produced by Knapton, allegedly in contravention of district policy.

Waterman first asserts that he sought to introduce the evidence of past policy violations to show that Morton's current investigation of Waterman was incomplete or otherwise false.  However, character evidence is inadmissible to show that a person acted in accordance with that character on a particular occasion. *See* Fed. R. Evid. 404(a)(1).  In addition, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The district court determined that this evidence was offered to show that Morton's past violations showed that she might have violated policies in dealing with Waterman.  Because Waterman

No. 15-40458

apparently offered this evidence to show Morton's propensity to violate policies, the district court did not abuse its discretion in excluding the evidence under Rule 404.[3]

Second, to the extent Waterman sought to offer Morton's past violations to attack her credibility, the evidence is properly characterized as relevant to her character for truthfulness. *See United States v. Poole*, 735 F.3d 269, 278 (5th Cir. 2013) (noting that because party was a witness at trial, "his character for truthfulness . . . was at issue"). "Rule 608(b) applies when extrinsic evidence is offered to impeach a witness, to show the character of the witness for untruthfulness." *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) (citation and internal quotation marks omitted). This rule "permit[s] inquiry on cross examination into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness." *United States v. Skelton*, 514 F.3d 433, 443–44 (5th Cir. 2008) (citation and internal quotation marks omitted) (alteration in original). "The district court has substantial discretion in determining the admissibility of impeachment evidence under Rule 608(b)." *Id.* at 444.

The district court did not abuse its discretion in refusing to permit questioning about Morton's appointment of interns or her allowance of Knapton to produce the YouTube video. "Rule 608(b) authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and

---

[3] To some extent, Waterman suggests that Morton's past violations show retaliatory motive. Rule 404(b) applies when extrinsic evidence is offered "as relevant to an issue in the case," such as motive. *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) (citation omitted). This court applies a two-prong test for the admissibility of extrinsic evidence under Rule 404(b), first asking whether the evidence is relevant for a non-character purpose and then determining whether its probative value is substantially outweighed by its prejudicial effect. *Id.* Waterman fails to explain how any of Morton's past violations of district policy are relevant to her motive for firing him for reporting unrelated misconduct.

embezzlement." *United States v. Heard*, 709 F.3d 413, 433 (5th Cir. 2013) (citation and internal quotation marks omitted). In *Heard*, we held that the witness's prior conduct was "nothing like perjury, fraud, swindling, forgery, bribery, or embezzlement" and thus was "not clearly probative of truthfulness or untruthfulness." *Id.* The complained-of conduct here—appointing interns without authority or allowing Knapton to produce the video—is not "clearly probative" of Morton's truthfulness or untruthfulness; any such questioning was not permitted under Rule 608. *See id.*

Waterman finally argues that the district court erred in not allowing him to question Morton about her failure to disclose her prior termination on her MISD employment application. *See E.E.O.C. v. Bobrich Enters.*, No. 08-10162, 2009 WL 577728, at \*3–4 (5th Cir. Mar. 6, 2009) (suggesting that job-application-misrepresentation evidence is proper impeachment testimony under Rule 608 but finding no abuse of discretion in its exclusion under Rule 403). Even if this exclusion was error, it did not have "a substantial effect on the outcome of the trial." *Verizon Commc'ns*, 761 F.3d at 430. This was not a case decided on sparse evidence. Instead, the trial record is replete with evidence; much of it suggests that Waterman behaved inappropriately and made some of his coworkers feel uncomfortable and file complaints. We are unconvinced that Waterman's inability to ask Morton about her employment application substantially affected the trial.

Waterman's evidentiary challenges do not merit a new trial.

### B.

Finally, we address Waterman's contention that the district judge's conduct deprived him of a fair trial. Reviewing the record as a whole, we discern no prejudicial error.

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper

conduct . . . ." *United States v. Jefferson*, 258 F.3d 405, 411–12 (5th Cir. 2001) (citation and internal quotation marks omitted).  The district judge "has the right and the duty to comment on the evidence to ensure a fair trial" and must "act when necessary to ensure that the trial is properly conducted and not subject to delay." *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 425 (5th Cir. 1990) (citations and internal quotation marks omitted).  "The trial judge must, of course, exercise these powers in a reasonable manner by maintaining his objectivity and neutrality."  *Id.*  The trial judge's conduct "is measured against a standard of fairness and impartiality."  *Id.* (citation and internal quotation marks omitted).

"In reviewing a claim that the trial court appeared partial, this court must determine whether the judge's behavior was so prejudicial that it denied the [complaining party] a fair, as opposed to a perfect, trial."  *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 579 (5th Cir. 2001) (citation and internal quotation marks omitted).  "Our review of the trial court's actions must be based on the entire trial record."  *Id.*  (citation and quotation marks omitted).  "A trial judge's comments or questions are placed in the proper context by viewing the 'totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions.'"  *Id.*  (quoting *United States v. Saenz*, 134 F.3d 697, 702 (5th Cir. 1998)).  "The totality of the circumstances must show that the trial judge's intervention was quantitatively and qualitatively substantial."  *Id.* (quoting *Saenz*, 134 F.3d at 702).

Waterman did not object at trial, so our review is for plain error.  *See United States v. Lankford*, 196 F.3d 563, 572 (5th Cir. 1999) (noting that where "no objections were raised at trial, we review challenges to judicial conduct for plain error"); *see also Helmerich & Payne*, 892 F.2d at 425–26 (applying plain error review to judicial-bias challenge).

11

No. 15-40458

1.

We begin here with Waterman's challenge to what he describes as the district judge's "arbitrary dismissal" of witnesses, which he contends merits a new trial. In particular, Waterman points to two instances involving coworkers he called as witnesses: (1) the district court's decision not to allow redirect examination of Karen Strickland, and (2) the dismissal of Tammy Reiter after the attorneys returned from a recess one minute late. With regard to preventing redirect examination of Strickland, the district judge has "reasonable control over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a). The district judge's disallowance of redirect examination was in his discretion, and regardless, Waterman does not explain how he was prejudiced by the ruling. *See United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998) ("In order to show an abuse of discretion related to the limitations placed on cross-examination, a defendant must show that those limitations were clearly prejudicial.").

In reviewing this record, we similarly conclude that the dismissal of Reiter does not rise to the level of reversible error. Reiter had already testified that she did not feel that Waterman sexually harassed her and that she had not been interviewed by Morton or Davis. But, over the course of the three-day trial, the jury heard extensive evidence about the relevant incident and its effect on at least two other teachers. The jury did not need to base its verdict on whether all three teachers felt harassed. Moreover, Waterman made no offer of proof at trial—and fails to explain now—as to what further testimony he wished to elicit from Reiter.

2.

We finally address the comments by the district judge that Waterman asserts prejudiced him in front of the jury and deprived him of a fair trial.

No. 15-40458

Waterman points out that the district judge, at the final pretrial hearing, stated: "I'm not as old as you are but I did grow up in the days of trial by ambush . . . ."  Next, Waterman posits that the ethnicity of his associate "may have prompted" the district judge to tell the jury about how the judge had been "raised in a country that did not have jury trials."  Finally, Waterman asserts that the district court improperly accused him of "trying to poison the jury" and "staring" at him.  None of these claimed "errors" justify reversal.  The district judge's trial by ambush comment was made at a pretrial conference and thus could not have prejudiced Waterman before the jury.  As to the district judge's comment about having grown up in a country without juries, only Waterman's speculation suggests anything objectionable.  We refuse to infer any prejudice based on such speculation.  The district judge's other challenged comments (e.g., "poisoning the jury"), when viewed in the context of the trial record, do not rise to the level of reversible error.  By the time of the challenged statements, the district judge had already warned Waterman's counsel several times against injecting excluded evidence into the jury's mind or had otherwise explained what type of questioning was impermissible.  As we have emphasized before, "[f]ederal judges have wide discretion with respect to the tone and tempo of proceedings before them; they are not mere moderators or hosts at a symposium."  *United States v. Adkins*, 741 F.2d 744, 747 (5th Cir. 1984) (citation and internal quotation marks omitted).  The district court acted within its discretion to exercise control over the proceedings.

Waterman's final challenge is that the district court improperly commented on the evidence at trial.  Knapton complained that, in the underlying events in the pod, students asked her if she liked "blow jobs."  Waterman contends that the district court erred by remarking that the "blow job comment" was not at issue.  This argument misstates the proceedings.  In the challenged exchange, Waterman's counsel asked the witness: "Did you ask

13

No. 15-40458

her, 'Well, what did you do when [the student] told you that?' Did you ask her that?" The district judge then asked if the evidence established that the student made the comment as opposed to the comment being shouted across the room. We are satisfied that the district court's comment fell within its wide discretion to "elicit facts not yet adduced or clarify those previously presented." *Rodriguez*, 242 F.3d at 579; *see also Helmerich & Payne*, 892 F.2d at 425 (noting the district judge's "right and . . . duty to comment on the evidence to ensure a fair trial").

Regardless, any potential prejudice from the district court's statements or comments was sufficiently alleviated by the numerous curative instructions. In *Helmerich & Payne*, we held, in the context of a judicial-bias claim, that "[a]ny potential prejudice . . . was adequately cured by the trial court's instructions to the jury both at the beginning and at the end of the trial to ignore his comments and to be the sole judge of the facts." 892 F.2d at 426. Here, the district judge reminded the jury throughout the trial (not just at the beginning and end) that they were the sole judges of the facts and should not draw any conclusions about the case from his statements. Though limiting instructions do not always cure prejudice, the instructions here were sufficient. *See United States v. Williams*, 809 F.2d 1072, 1088–89 (5th Cir. 1987) (recognizing the importance of "clear and repeated instructions" in evaluating a claim that a trial was biased).

In sum, our thorough review of the record fails to reveal the type of systematic bias that would satisfy our rigorous plain-error standard. *See Rodriguez*, 242 F.3d at 579–80. We conclude that Waterman was not deprived of a fair trial.

AFFIRMED.

14