**Maurice JARJOURA, Plaintiff,**

v.

**ERICSSON, INC., Defendant.**

**No. CIV.A.3:01–CV–1542–L.**

United States District Court,
N.D. Texas,
Dallas Division.

May 22, 2003.

---

Durwood D Crawford, Goins Underkofler Crawford & Langdon, Dallas, TX, for Plaintiff.

Carrie B Hoffman, Celeste Yeager Winford, Gardere Wynne Sewell, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendant's Motion for Summary Judgment, filed May 7, 2002. After careful consideration of the motion, response, reply, briefs, appendices, and the applicable authority, the court, for the reasons stated herein, grants Defendant's Motion for Summary Judgment.

### I. Procedural and Factual Background

Maurice Jarjoura ("Plaintiff" or "Jarjoura") filed this action against Ericsson, Inc. ("Defendant" or "Ericsson") on August 9, 2001. Jarjoura contends that his termination on November 20, 2000, was in retaliation for his taking leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Plaintiff contends that the termination violated the FMLA, that it occurred only because of Ericsson's animosity toward him since he was on leave and not performing all of his job duties at Ericsson's premises. He also contended that the conduct of Ericsson in

discharging him violated 29 U.S.C. § 1140, because the termination prevented him from recovering eligible disability benefits under Ericsson's disability program. On January 14, 2002, Plaintiff filed his First Amended Complaint in which he deleted this claim. Accordingly, the only claim pending is Plaintiff's claim under the FMLA.

Ericsson disagrees with Plaintiff's contentions. Ericsson contends that it had legitimate, non-discriminatory reasons for terminating Plaintiff and that it did not retaliate against him for taking leave pursuant to the FMLA, or terminate him to retaliate against him for alleged anticipated claims for disability benefits.

Ericsson filed a motion for summary judgment, contending that no genuine issues of material fact exist regarding Plaintiff's claim. Specifically, Ericsson contends that Jarjoura fails to establish, or raise a genuine issue of material fact, that a *prima facie* case for retaliation exists. Defendant also contends that it has established that Jarjoura was terminated for reasons unrelated to his rights under the FMLA, and that Jarjoura has presented no probative evidence to establish, or raise a genuine issue of material fact, that he was discharged for exercising his rights under the FMLA. Jarjoura, of course, disagrees and contends that he has submitted evidence from which a reasonable jury could infer that Ericsson retaliated against him for exercising his rights under the FMLA.

The court now sets forth the facts it relies on to decide the pending motion for summary judgment. Both parties include facts which are irrelevant and immaterial. The court disregards all such irrelevant and immaterial evidence. The parties at times embellish and misstate certain facts and testimony in their zeal to convince the court that it should rule a certain way.

Also both parties at times draw inferences or make interpretations regarding evidence to which it is not susceptible. In such instances, the court ignores what the parties have stated and relies on the record for accuracy and the context in which evidence is presented; however, such tactics only serve to delay the court's ruling on summary judgment. Finally, in ruling on the pending summary judgment motion, the court uses the standard as herein set forth.

Jarjoura worked for Ericsson for approximately ten years, starting in 1990. He later transferred to the software department to work for Kennet Skold ("Skold") and Fayez Khamash ("Khamash") as a software engineer. In November 1999, Khamash, Jarjoura's immediate supervisor, promoted him to group manager. As a team leader, Jarjoura was responsible for supervising between six and nine employees.

In early June 2000, Jarjoura was seriously injured in an automobile accident. Jarjoura saw a chiropractor on June 5, 2000, and his doctor issued an excuse for him to be off work until a reevaluation on June 18, 2000. Ericsson preliminarily approved Jarjoura for FMLA leave starting June 6, 2000, and designated him as being on full FMLA leave from June 6 to July 7, 2000, and intermittent FMLA leave from July 7, 2000, to November 2, 2000. Jarjoura states that he did not know he was on FMLA leave before November 2, 2000, and that he never received any notification or information that he was on such leave. For purposes of summary judgment, the court accepts this statement as true; however, the documentation establishes that Ericsson considered Jarjoura to be on such leave and treated him as if he were. Moreover, no evidence in the record indicates that the information from Ericsson

regarding the placement of Jarjoura on FMLA leave is incorrect or fabricated.

Jarjoura did not perform any work for Ericsson between June 6, 2000 and July 7, 2000. On July 7, 2000, Jarjoura's doctor released him to work for four hours per day, and Khamash allowed Jarjoura to work these four hours from home. Jarjoura worked for four hours per day for about one and one-half months. At some point, he began working more than four hours per day, but the record is not clear when he increased his hours per day. On September 11, 2000, Jarjoura's doctor released him to work for six hours per day, and Jarjoura worked six hours per day from September 11, 2000 to October 31, 2000. On October 31, 2000, Jarjoura called Skold and requested a meeting with him.

On November 1, 2000, Jarjoura met with Khamash and Skold, Khamash's manager. Initially, Jarjoura met only with Skold. Khamash later walked into Skold's office, and the three began discussing certain matters. At this point in time, Jarjoura had not returned to work; he was working from home about six hours per day directing his group via e-mails and telephone calls. Jarjoura believed that he needed to continue to work in this manner until he recovered more fully and was able to work full time. Khamash, according to Jarjoura, did not approve of his working from home (telecommuting). Jarjoura was "shocked" by Khamash's opposition to his working at home because Khamash had been approving his timesheets during the time he was working at home. Khamash did not believe that Jarjoura should continue to work from home or telecommute indefinitely because Jarjoura, as a manager, needed to be with his workers who needed supervision. Khamash did not oppose Jarjoura working from home during the time he was recovering from the acci-

dent; and Jarjoura acknowledged that Khamash allowed him to work from home. Jarjoura knew and acknowledged that his working from home would be a "temporary situation." Neither the release on July 7, 2000, nor the one on September 11, 2000, required or directed Jarjoura to work at home.

The meeting apparently became heated, or at least intense. According to Jarjoura, Khamash "insisted" that he could not continue "to work like this anymore," a reference to Jarjoura's telecommuting. Jarjoura responded that since Khamash did not want him to continue telecommuting and since he could not come to work because of certain restrictions ordered by his doctor, he would "take a project and work as a consultant." Khamash responded that Jarjoura could not work as a consultant while employed at Ericsson and told him that he would have to "quit" his job at Ericsson, because it would present a conflict of interest. Jarjoura replied that he would "quit" his employment at Ericsson if that was what it took for him to become a consultant. At some point, Jarjoura requested that he be allowed to keep his Ericsson-issued telephone or telephone number if he resigned.

After Jarjoura stated that he would resign so that he could work as a consultant, Bonnie Storer ("Storer"), a human resources manager, was summoned to the meeting to process and coordinate Jarjoura's resignation. She was provided the background facts regarding Jarjoura's intended resignation. Storer instructed Jarjoura to prepare his resignation letter and send it to her attention. Jarjoura decided that he should consult his wife before he made a final decision to resign. Storer told Jarjoura to consider whether he wanted to resign, talk it over with his wife, and return to Ericsson the following day to meet with her.

Sometime after the meeting, Storer reviewed Jarjoura's FMLA file and discovered that the required medical certification had not been completed by Jarjoura's doctor, although Ericsson had designated him as being on full FMLA leave from June 6, 2000 to July 7, 2000 and on intermittent FMLA leave from July 7, 2000 to November 2, 2000. Ericsson had received no communication from Jarjoura's physician regarding his physical condition since September 11, 2000.

On November 2, 2000, Storer, Khamash and Donna Strode, a human resources representative, met with Jarjoura. Jarjoura decided not to resign. Jarjoura was placed on full FMLA leave until the medical certification was completed and his doctor's work release was provided to Ericsson. Jarjoura was instructed to do no work for Ericsson until it received a medical report concerning Jarjoura's ability to work. Jarjoura informed the others at the meeting that he had a magnetic resonance imaging ("MRI") test scheduled for November 11, 2000.

After being placed on full FMLA on November 2, 2000, Jarjoura did not immediately hear from Storer or Khamash. The MRI was performed; Jarjoura took the MRI results and the medical report from his doctor and, pursuant to Storer's instructions, left them at her office. He did not hear from either again until his termination on November 20, 2000.

Based on Jarjoura's requests and conduct, Khamash states that he began to piece together the events from the entire summer and questioned whether Jarjoura had Ericsson's best interests in mind when he requested to telecommute.[1] First, Khamash recalled $10,000 of expenses incurred by Jarjoura in June and July while he was on FMLA leave. Second, Jarjoura had worked part-time from home, unsupervised for five months and now, according to Khamash, was insisting that this arrangement be made permanent. Jarjoura's group had problems with his accessibility and availability to respond to questions while he was managing the group from home—several employees had tried to contact Jarjoura on his Ericsson phone without success. Third, Khamash believed that Jarjoura was operating a telecom consulting business from home in competition with Ericsson. Finally, Jarjoura wanted to keep his Ericsson phone number if he were to become a consultant. Khamash states that all of these events raised a "red flag" in his mind about whether Jarjoura was working for other businesses, besides Ericsson, and using Ericsson's credit card and mobile phone to conduct this business while he was at home.

Sometime after the meeting on November 2, 2000, Khamash approached Storer with his concerns regarding what he believed to be Jarjoura's behavior for the preceding five months. Khamash told Storer that he had received an e-mail notice that Jarjoura had a $10,000 balance on his corporate credit card that was sixty

---

1. The court fully understands that Jarjoura disputes Khamash's account; however, the court sets forth this information for background purposes and to show Khamash's state of mind. In deciding this matter, the court considered the $10,000 in expenses, the issue of Jarjoura's accessibility to his employees, and the matter of Jarjoura wanting to keep his Ericsson telephone or telephone number, because these matters have not been placed in dispute by competent summary judgment evidence. The court does not accept that Jarjoura requested that he be allowed to work from home on a permanent basis, because he denies in his affidavit that he ever made such a request to Khamash. The court totally disregards any reference to the alleged telecom business, because it is disputed and plays no part in the court's decision.

days past due. Khamash further stated that he believed that Jarjoura was not accessible to his group while he was working at home, because several employees had tried to contact him on his Ericsson mobile phone and were unsuccessful. Khamash, according to Storer, was also concerned with Jarjoura's alleged demand to telecommute permanently, while he also operated a telecom consulting company in competition with Ericsson.[2] Khamash also stated to Storer that he thought it was strange that Jarjoura insisted he be allowed to keep his Ericsson mobile phone if he resigned. Khamash was concerned that Jarjoura might not be promoting Ericsson's best interests.

After hearing Khamash's concerns, Storer began an internal audit of Jarjoura's corporate credit card use and mobile phone use. Because of what was discovered with respect to the internal audit, Storer contacted Ericsson's Corporate Security Department to have it conduct an internal investigation. The investigation revealed that Jarjoura had violated Ericsson's policies regarding the use of his corporate credit card and mobile phone, that is, that Jarjoura's corporate credit card and cell phone were used on many occasions for his personal use.

Storer categorized the violations of the credit card and mobile phone use policies as "excessive" and "egregious" and recommended that Jarjoura's employment be terminated. Khamash and Scold reviewed her recommendation, and it was forwarded to the head of the research and development department, the director of human resources, and the legal department. The termination was approved at all of these levels. Storer, Khamash, and Strode contacted Jarjoura by telephone on November 20, 2000, and informed him that Ericsson was terminating his employment because of credit card and cell phone abuse. Storer did not provide Jarjoura a chance to explain any of the circumstances related to the credit card or cell phone abuse. Jarjoura told Storer that he wanted to appeal the decision to terminate him, and Storer replied that the termination was final, because top management had approved it. This lawsuit comes as a result of Jarjoura's termination.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133,

---

**2.** Once again, the court mentions these two matters only to relate what Khamash told Storer. Plaintiff disputes them, and the court accepts his account; however, they are of no moment to the court's decision.

150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Defendant's Motion for Summary Judgment*

### A. Plaintiff's FMLA Claim

#### 1. Plaintiff's Contentions

The essence of Plaintiff's claim is that he was placed on full FMLA leave on November 2, 2000, that he provided the requested medical information to Storer, and that he later received a telephone call from Storer and Khamash, who informed him that he was being terminated for credit card abuse and cellular phone abuse. Jarjoura was given no opportunity to explain any facts related to either of the alleged violations. Although Storer promised to provide him with a letter specifying the reasons for his termination, she never did so. Jarjoura contends that Ericsson's reasons for terminating him are highly questionable and that its actions were sudden and drastic, and constituted an "about-face" in Khamash's position from wanting Jarjoura to stay on the job to wanting to get rid of him. Jarjoura contends that Khamash's sudden change in position "arose from the fact that he had been placed on total FMLA leave" in which he would perform no work for what could have been for an indefinite period of time. According to Jarjoura, the timing of his discharge in conjunction with the meeting in early November 2000, establishes retaliation, or at least raises genuine issue of material fact whether Ericsson retaliated against him because he was placed on full FMLA leave.

#### 2. Defendant's Contentions

Ericsson contends that the summary judgment evidence shows that Jarjoura took advantage of his privileges at Ericsson, and that this led to his termination.

According to Ericsson, Jarjoura's request to retain his Ericsson mobile phone following his resignation, his failure to pay his Ericsson credit card bill, his insistence on a permanent telecommuting position, and his attempts to solicit Ericsson to buy his consulting services triggered an investigation into his credit card and mobile phone habits, which uncovered substantial violations of both policies. Ericsson contends that these violations prompted Jarjoura's termination—not his use of FMLA leave—and constitute legitimate, nondiscriminatory reasons for his discharge.

## B. Standard in FMLA Cases

Under the FMLA, an eligible employee is allowed to take up to 12 work weeks of leave in a twelve-month period (1) when the employee has a serious health condition that makes him unable to perform the duties of his position, (2) to care for a close family member with a serious health condition, (3) because of the birth of a child, or (4) because of the placement of a child with the employee for adoption or foster care. 29 U.S.C. § 2612(a)(1)(A)-(D); *Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir.1998), *cert. denied*, 528 U.S. 872, 120 S.Ct. 175, 145 L.Ed.2d 148 (1999). The FMLA makes it unlawful for an employer to interfere with, restrain, or deny an employee's FMLA rights, or to discriminate or retaliate against an employee for exercising such rights. 29 U.S.C. § 2615(a)(1), (2); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999).

■ For an employee who has no direct evidence of discrimination, the familiar burden-shifting analysis applied in Title VII cases applies to FMLA cases. *Chaffin*, 179 F.3d at 319. Under the evidentiary analysis first developed by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Jarjoura must first set out a *prima facie* case of discrimination or retaliation by showing that (1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and (3) other employees who did not request FMLA leave were treated more favorably than he, or that the adverse employment decision was made because of his request for leave under the FMLA.[3] *Bocalbos*, 162 F.3d at 383. If Jarjoura successfully establishes his *prima facie* case, the burden then shifts to Ericsson to articulate a legitimate, nondiscriminatory reason for Jarjoura's discharge. *Id.* If it successfully does so, then the burden shifts back to Jarjoura, and he must set forth evidence showing that Ericsson's stated reason for its action is a pretext for discrimination or retaliation. *Id.* In other words, a "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

■ Contrary to Ericsson's assertion, "pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir.2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law.

---

**3.** The third element for a *prima facie* case can also be established if the plaintiff demonstrates that the adverse employment decision occurred because he *took* FMLA leave. *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir.2001).

*See Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Sandstad,* 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment in favor of the employer. By way of example, an employer would be entitled to summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."[4] *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. On the other hand, in the context of an unlawful discrimination or retaliation claim, summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [leave under the FMLA] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State Univ.,* 218 F.3d 365, 373 n. 23 (5th Cir.), *reh'g denied,* 232 F.3d 212 (5th Cir.2000), *cert. denied,* 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 772 (2001) (quoting *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (*en banc* )).

### C. Analysis

#### 1. *Prima Facie* Case

██ Defendant Ericsson acknowledges that Plaintiff meets the first and second elements necessary to establish a *prima facie* case of retaliation under the FMLA. Ericsson, however, contends that Jarjoura has not established the third element and therefore fails to establish a *prima facie* case of retaliation. The court agrees.

The third element of a *prima facie* case requires Jarjoura to establish that other employees who did not request FMLA leave were treated more favorably than he, or that the adverse employment decision was made because he requested or took leave under the FMLA. First, there is absolutely no evidence in the record that persons who did not request leave were treated more favorably than Jarjoura. The summary judgment record establishes the opposite. Prior to Jarjoura's termination, Ericsson terminated Cesar Dominguez for credit card and telephone misuse. Dominguez worked in the same department as Jarjoura and was supervised by Skold. Jarjoura presents no evidence to dispute the facts surrounding Dominguez's termination.

Second, Jarjoura fails to establish that he ever requested FMLA leave. In fact, Jarjoura disavows receipt of any information or documentation regarding family and medical leave. When he was placed on full FMLA leave in November 2000, he did not request it. Ericsson placed him on full FMLA leave rather than intermittent leave. Since Jarjoura never requested FMLA leave, Ericsson can incur no liability on this basis. *Hypes v. First Commerce Corp.,* 134 F.3d 721, 726 (5th Cir. 1998).

██ Next, the court examines whether Jarjoura can establish the third element of a *prima facie* case because he took FMLA leave. Regardless of what Jarjoura's belief was while he was recuperating and working at home, Ericsson had long placed and considered Jarjoura to be on FMLA leave. That he did not know he was on

---

**4.** The court, for the reasons herein discussed, believes that either of these is grounds for summary judgment in this case.

leave or never received notification that he was on FMLA leave is of no moment to the court's decision. As Jarjoura was already on intermittent FMLA leave, the court does not understand the basis for his argument that the termination was because he *took* FMLA. The nexus is simply not present.

For the reasons stated herein, Jarjoura fails to establish a *prima facie* case of retaliation under the FMLA. There is no genuine issue of material fact regarding Plaintiff's claim of retaliation, and Ericsson is entitled to judgment as a matter of law.

### 2. Pretext

■ Even if one were to conclude that Jarjoura made out a *prima facie* case, his claim nevertheless fails because evidence of pretext is not present. Jarjoura contends that Ericsson's stated reasons for his discharge are nothing more than a pretext for retaliation for his taking leave under the FMLA. According to Jarjoura, a reasonable jury could infer that Ericsson retaliated against him for taking or being placed on such leave. The court disagrees.

Ericsson articulated and produced evidence that Jarjoura was terminated for misuse of his company credit card and company cell phone. The court first focuses on the use of the corporate credit card. With respect to the use of a corporate credit card, an employee was to "use the card solely for Ericsson business-related travel, meals, or other similar expenses. *Use of the card for personal expenses is not allowed.*" Defendant's Appendix at 91 (emphasis in original). Jarjoura acknowledged on May 27, 1999 that he was aware of this policy regarding use of the corporate credit card and that he could be discharged or face other disciplinary action if he misused or abused his card privileges.

*Id.* Ericsson's Business Travel and Expense Reimbursement Policy also provides that the corporate credit card is to be used for business-related expenses only and that misuse of the card may result in disciplinary action, which could include termination, and repayment of any outstanding balances.

Jarjoura acknowledges that he violated the corporate credit card policy. Even if he were to deny that he violated the credit card policy, the record leaves no doubt that Jarjoura used his company card to make numerous purchases that were not business-related. From June 5, 2000 to November 2, 2000, some of the places Jarjoura used the corporate credit card include Chuck E. Cheese, Planned Parenthood, Salon City, Doc's Bail Bonds, City of Mesquite, Toys "R" Us, Extended Stay America, Super 8 Motel, Lowe's, and Al–Amir Restaurant. The record also reflects that Jarjoura used the corporate credit card for personal use and expenses at numerous restaurants, service stations, and other businesses. Shortly after the meeting on November 2, 2000, Jarjoura used the card to purchase a load of bricks for his personal residence.

■ In light of this evidence, it would be fatuous to even argue that Jarjoura did not abuse or misuse the credit card. His use of the credit card for personal expenses clearly violates Ericsson's policy on use of corporate credit cards. Ericsson has thus met its burden and articulated a legitimate, nondiscriminatory reason for discharging Jarjoura. *The court determines that this reason alone is sufficient for Ericsson to meet its burden and finds it unnecessary to discuss the other reason for termination—abuse of Ericsson's mobile phone policy.*[5]

**5.** Plaintiff contends that Ericsson's mobile phone policy does not state that use of the

### 3. Timing of Termination

Plaintiff Jarjoura places considerable reliance on the timing of his termination to attempt to support an inference of retaliation. While Jarjoura's termination took place shortly after he was placed on full FMLA leave, it does not create an inference of retaliation. Jarjoura had been on some type of FMLA leave since June 2000. His argument really is that since the termination came so close in time to his return to full FMLA leave, retaliation "must have been" the reason that he was terminated. This is simply *too slender* a reed to support an inference that retaliation occurred because Jarjoura took FMLA leave.

Jarjoura cites *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1141 n. 13 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982), in support of his position that an alleged retaliatory act which occurs "within a relative short time" after an employee engages in statutorily protected conduct allows one to infer retaliation. Plaintiff's reliance on *Payne* is misplaced. In *Payne*, the employer's sole stated reason for not rehiring the plaintiff was because he failed to reapply for a job. The plaintiff, however, introduced substantial evidence that he *did* reapply for a job to show that the employer's proffered reason for refusal to hire was pretextual. Moreover, the trial court in *Payne* actually found that the plaintiff did reapply for his job with the

employer. *Id.* at 1142. Here, there is no question that Jarjoura violated Ericsson's policy regarding the use of a corporate credit card. In other words, the record in this case conclusively reveals some other nonretaliatory reason for Ericsson's decision to terminate Jarjoura—abuse or misuse of his company-issued credit card. Jarjoura presents no evidence that Khamash knew of the violations prior to his being placed on FMLA leave in June 2000. Had Jarjoura not become delinquent on his account, the violations of the credit card policy would have remained undetected, or at least never would have been an issue.

In *Payne*, the employee, in addition to proximity in time, presented "sufficient subsidiary facts" to support a finding of retaliatory discrimination. *Id.* at 1147. Jarjoura has no requisite subsidiary facts to support his claim of retaliation. He has only proximity in time, and that, under the circumstances of this case, is insufficient to infer that retaliatory discrimination took place because Jarjoura took or was placed on full FMLA leave. Stated another way, timing alone is not enough to support retaliation when evidence shows that the employer's actions were justified. An anti-discrimination or retaliation statute does not exempt an employee from violations of company work rules or job requirements. *See Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 n. 3 (5th Cir.1997).[6]

company-issued telephone is a violation for which an employee can be discharged. The court agrees. Any reference to abuse of the mobile phone policy is for background purposes only; the court did not consider the alleged violation or allow it to play any part whatsoever in its decision.

**6.** The court also rejects Defendant's contention that a lapse of time of five months between the protected activity and adverse employment decision breaks the causal con-

nection as a matter of law. The Fifth Circuit has held that retaliatory conduct occurring four months after the protected activity can create the necessary inference of a causal connection. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir.2001). Conversely, a long delay between the protected activity and the alleged retaliatory conduct is not "legally conclusive proof against retaliation." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir.1992).

■ Plaintiff clearly has a subjective belief that his being on full FMLA leave was the reason that he was discharged. A subjective belief, however, cannot establish a genuine issue of material fact regarding pretext or that Jarjoura was a victim of retaliatory discrimination. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir.1997); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir.1997); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc* ).

Jarjoura challenges Ericsson's contentions that the termination was purely a business decision. In this regard, Jarjoura raises matters which the court has already stated that it would not consider because they are in dispute. Although disputed, they are not relevant or material to the court's consideration of Plaintiff's FMLA claim. These include references to Jarjoura's alleged desire or request to work permanently from home, and Jarjoura's operation of or desire to operate an alleged business in competition with Ericsson. The court also excludes any consideration of the alleged automobile business operated by Jarjoura and his brothers.

■ Jarjoura's opposition to the summary judgment motion also focuses on the reasonableness or arbitrariness of Ericsson's decision to terminate him. An employment decision does not have to be correct, and can even be arbitrary or unreasonable. *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir.1988). The issue of the credit card first came up around August 18, 2000, and Jarjoura essentially takes the position that something should have been done at that time, if Ericsson really considered it to be a serious matter. Ericsson certainly could have taken action at that time, but this only means that Jarjoura would have been terminated three months earlier—in August rather than November 2000. The court fails to see how this argument advances Jarjoura's position. That Ericsson did not act as soon as it could have acted does nothing to establish pretext in this instance. Jarjoura concedes that he violated Ericsson's credit card policy. That Ericsson's decision may seem arbitrary or unreasonable to some after three months does not raise an inference of retaliation in light of the evidence submitted in this case. The actions of Ericsson are not so irrational or implausible as to suggest a cover-up. *See Equal Employment Opportunity Comm'n v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1443–44 (5th Cir.1995).

As an additional basis for the existence of pretext, Jarjoura states that he had been using his company credit card for five years for purchases of personal items or services, and Ericsson had not cautioned him or disciplined him for such use. This argument has several flaws. First, Ericsson does not routinely monitor credit card used by its employees. Khamash had no reason to suspect that something was amiss until he received an e-mail that Jarjoura owed more than $10,000 and the account was 60 days past due. Ericsson's policy was to send an e-mail to the employee and supervisor only if an account was 60 days past due. Had Jarjoura been current on his account, in all probability, his use of the credit card for personal matters and non-business related expenses would have gone undetected.

Second, there is no evidence that Jarjoura was singled out for disciplinary action. Had evidence been produced that other employees had done what Jarjoura did and received no disciplinary action, Jarjoura would have established a *prima facie* case and created a fact question regarding pretext. The record, however, reveals that this is not the case. Dominguez

was fired prior to Jarjoura for credit card abuse and cell phone abuse.

Third, and perhaps most remarkable, Jarjoura seems to genuinely believe that Ericsson should have excused him for the violations of the credit card policy, or that he cannot be disciplined while on FMLA leave. Such a position does not reflect a correct statement or interpretation of applicable law. Jarjoura's logic, if rationally extended, would excuse an individual for his criminal acts because the acts have gone undetected for five years. Anti-discrimination statutes *do not* prevent employers from disciplining employees who violate company rules or policies, and an employee cannot use such a statute as a shield against legitimate disciplinary action. The statutes *do* prevent adverse employment action based on discrimination or retaliation. The evidence clearly establishes that Jarjoura was terminated for his abuse of the credit card policy, not because of his leave under the FMLA. Accordingly, under the standard promulgated in *Reeves*, summary judgment is appropriate on behalf of Ericsson.

## IV. *Miscellaneous*

### A. Defendant's Objections to Plaintiff Summary Judgment Evidence

Ericsson has lodged numerous objections to Plaintiff's summary judgment evidence because of alleged "speculative and conclusory statements" and "factual representations which are not supported with any evidence." The court previously set forth the standard it relied on in resolving the summary judgment motion. As a result, the court has not considered any evidence which does not constitute competent summary judgment proof under Fed. R.Civ.P. 56. Accordingly, Defendant's objections to Plaintiff's summary judgment evidence are overruled as moot. Although Plaintiff did not file formal objections, he protested and complained about some of the evidence submitted by Defendant. The court applied the same standard and considered only competent summary judgment evidence, and his objections are overruled as moot.

### B. Request for Oral Argument

Plaintiff Jarjoura requested oral argument on Defendant's Motion for Summary Judgment. The court determines that the parties have more than adequately presented the issues and their respective positions in this case, and does not believe oral argument will assist it in ruling on the motion for summary judgment. Oral argument is therefore unnecessary. Accordingly, the court denies Plaintiff's request for oral argument.

## V. *Conclusion*

For the reasons stated herein, there is no genuine issue of material fact regarding Plaintiff's FMLA claim. Defendant's Motion for Summary Judgment is therefore **granted**, and the court **dismisses** this action with prejudice against Defendant Ericsson. Judgment will issue by separate document as required by Fed.R.Civ.P. 58.