IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-11027

HERBERT GRUBB

Plaintiff - Appellant

v.

SOUTHWEST AIRLINES

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-1934

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

This case concerns claims brought by Herbert Grubb against his former employer, Southwest Airlines ("SWA"), under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA"). Grubb claims that SWA violated the ADA by firing him rather than accommodating his sleep apnea—which caused him to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"nod off" at work—and the FMLA by firing him rather than granting his request for leave. The district court granted summary judgment to SWA on both claims. For the reasons provided below, we affirm.

## I. FACTS AND PROCEEDINGS

SWA is a passenger airline company headquartered in Dallas, Texas. In March of 1999, SWA hired Grubb as a flight instructor. In this position, Grubb was required to train pilots through flight simulator and class instruction (with related office hours), and, in so doing, maintain a certain level of expertise by his own training and technique development in instructor meetings and activities. SWA employed Grubb in this post until his firing on June 21, 2004. According to his termination letter, SWA fired Grubb for repeated "sleeping on the job." Grubb does not deny sleeping, but asserts that it was caused by sleep apnea—a condition from which he claims to have suffered since a heart surgery in 2001. Instead of firing him, Grubb claims that SWA should have accommodated him, by FMLA leave or otherwise.

Grubb's work problems first surfaced in December of 2002 when he failed to report to work for several days. Shortly thereafter, Grubb was counseled by a supervisor, David Colunga, about his absences and also about sleeping during instructor meetings, which Colunga had observed. Grubb reported that "he was on medication and seeking treatment" for the sleep problem. Colunga offered help, but Grubb declined. The sleep problem recurred in March of 2003 in an instructor meeting and in training pilots on a simulator. Grubb was counseled again in a meeting with Colunga, Bob Torti (a training director and supervisor), and Jim Evans (a union representative), and was offered help again—this time, in the form of a referral to SWA's counseling service. SWA requested a diagnosis

and prognosis from a doctor, but it appears that Grubb never provided anything more than a conclusory note that "he was being seen for sleep apnea."

As described in the district court's opinion—a description Grubb does not dispute—a pattern of sleeping, both during Grubb's instruction of others and his own training, followed by supervisor meetings and warnings, continued throughout 2003. Although Colunga suggested, near the end of 2003, that there may have been some improvement in the sleeping at work, he suspended Grubb in January of 2004 due to complaints about Grubb's "performance in the [flight] simulator" as well as his appearance and hygiene, which Colunga saw as cause for concern. Despite the warnings, Grubb fell asleep again on February 11, 2004 during a simulated runway approach for his trainees. Grubb was then removed from the training schedule for the rest of the month but encouraged by Colunga to pursue treatment in which Grubb professed interest. The problem recurred on March 4, 2004, when Grubb fell asleep at an instructor meeting. In response to SWA's call for a meeting to discuss the problem again, Grubb asked SWA for a schedule adjustment to undergo a three and a half week "medical treatment program for [his] sleeping issues." Colunga granted the request. Unfortunately, Grubb fell asleep again at a new hire training program in May of 2004. Colunga, Torti, Evans, and Grubb met again on June 9, 2004 to discuss the ongoing issue.

SWA terminated Grubb's employment on June 21, 2004. Colunga stated in an affidavit: "I terminated Mr. Grubb based on his behavioral problem for the past year and a half. Mr. Grubb had failed to improve his problems after the numerous counseling sessions, offers of schedule adjustments, and offers to take time off." Affidavits from Torti and a third supervisor, Donald Shull, echoed Colunga's concerns and the various grounds for termination. Regarding Grubb's

termination, Shull noted that there was a "well-documented history of Mr. Grubb's performance problems . . . [and] [g]iven the fact that [SWA] had given [him] countless opportunities to improve his problem, I believed [SWA] had no other option . . . ." Grubb testified that he understood well in advance that "if the problem continued, . . . it may result in termination." Although Grubb's termination technically violated the collective bargaining agreement by taking place nine, rather than seven, work days after a counseling meeting, it was later affirmed by a tribunal established under that agreement.

Grubb's chief factual contention on appeal appears to be that he "worked quite effectively despite having momentary lapses of nodding off." In support, he cites positive reviews and his apparent compliance with several Federal Aviation Administration ("FAA") regulations. He also argues that he underwent a series of efforts to treat his "sleep disorder," although his only record citations regarding such efforts are a February 4, 2004 doctor's note authorizing him to work but indicating "manag[ement] [of] his sleep disorder," and another doctor's note on April 26, 2004 indicating that Grubb "is a patient in our clinic . . . [and] has been advised to work the [afternoon] shift . . . only." Although Grubb claims he requested the afternoon shift, it is unclear what occurred in response. In any event, Torti (the training director) testified that permitting "Grubb to work a set shift schedule would require all the other Flight Instructors to work harder and longer hours than [] Grubb . . . [and] would also require [SWA] to fundamentally alter its established schedule[,] . . . the office day policy[,] and required hours."

Regarding Grubb's request for FMLA leave, the possibility of such leave was first raised by Evans (the union representative) in the last group meeting on June 9, 2004. Colunga asserted in his affidavit, however, that "[d]espite []

4

Grubb's indication that he would inquire as to FMLA, I decided to terminate [him]." Torti similarly affirmed the absence of any FMLA consideration in the termination decision. After the meeting—but before his firing—Grubb met with SWA's FMLA coordinator, who told him that he would need to submit a medical certification of eligibility to SWA's FMLA administrator to qualify for such leave. Although the process was initiated on June 17, 2004, Grubb never submitted a certification, and the process was terminated on July 7, 2004. Grubb offered no evidence that Colunga or Torti were aware of his application for FMLA leave at the time of his firing.

On September 29, 2005, Grubb filed this action, alleging violations of the ADA, FMLA, Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"), and Texas wrongful termination law. SWA moved for summary judgment on October 27, 2006. The district court granted SWA's motion in full on June 11, 2007. Grubb only appeals the ADA and FMLA claims.

As to the ADA claim, the district court assumed, for the sake of argument, that Grubb had a "disability" under the statute, but still rejected his claim. Although it is unclear whether the district court considered Grubb's claim to be one for disparate treatment (i.e., he was fired because of a disability) or failure to accommodate (i.e., he was fired because of performance, but that performance was caused by a disability that could have been accommodated), its findings preclude both options. On disparate treatment, the court found that "Grubb has adduced no facts suggesting that a discriminatory reason likely motivated the decision to terminate his employment or that [SWA]'s explanation [of poor productivity and work rule violations] was not credible, i.e., was probably pretextual." See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515–18 (1993);

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). With regard to accommodation, the court found that "Grubb could not perform the essential functions of his job, and [SWA] reasonably accommodated Grubb's condition," as required under the ADA. See Chandler v. City of Dallas, 2 F.3d 1385, 1393–94 (5th Cir. 1993).

As to Grubb's FMLA claim, the district court addressed it as a retaliation, or discrimination, claim rather than a claim for failure to grant leave. As such, it used the burden-shifting test for indirect evidence discrimination cases that also involve "mixed motives," per Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332–33 (5th Cir. 2005) (applying Desert Palace to FMLA retaliation in indirect evidence, mixed-motive case). The court found that Grubb failed to offer any evidence of a causal link between his pursuit of FMLA leave and his firing, and that even if he had, he also failed to offer any evidence to rebut the legitimate reasons set forth by SWA.

On appeal, Grubb claims that the district court erred by finding that SWA both met its affirmative duties under the ADA and FMLA, and did not otherwise discriminate against him because of his pursuit of FMLA leave. SWA counters that the district court did not err, and further adds that even if it did, summary judgment would still be proper because Grubb did not suffer from a "disability" or "serious health condition" as required by the ADA and FMLA, respectively.

## II. STANDARD OF REVIEW

This court reviews grants of summary judgment de novo. Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

6

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." Performance Autoplex II Ltd. v. Mid-Continent Cas. Co., 322 F.3d 847, 853 (5th Cir. 2003).

### III. DISCUSSION

### A. The ADA Claim

The district court granted summary judgment to SWA on the ADA claim because it found that SWA neither failed in its accommodation duty, because Grubb could not perform the essential functions of his job with or without reasonable accommodation, nor discriminated against Grubb because of his disability. The district court assumed arguendo that Grubb had a covered "disability," which the ADA defines in part as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). Because we find that the district court did not err in its dispositive findings, we also assume, without deciding, that Grubb's sleep apnea qualified as a disability.

Under the ADA, a covered employer—and it is undisputed that SWA is one—must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship . . . ." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is one with a "disability," who, "with or without reasonable accommodation, can [still] perform the essential functions of the employment position that [he or she] holds or desires." Id. at § 12111(8). Grubb's challenge fails because he was unable to

7

perform his job in a manner that SWA could reasonably accommodate. See Chandler, 2 F.3d at 1393–94.

Grubb's alleged disability involved a basic element of the performance of his job as a flight instructor, namely being conscious and alert. Lack of physical presence is a commonly-accepted disqualification for ADA protection. See, e.g., Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996); Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994); Amato v. St. Luke's Episcopal Hosp., 987 F. Supp. 523, 530 (S.D. Tex. 1997). More to the point, courts have repeatedly approved of ADA-challenged discharges for falling asleep at work, particularly in safety-sensitive positions. See, e.g., Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 2000); Cannon v. Monsanto Co., No. 05-5558, 2008 WL 236922, at *4 (E.D. La. Jan. 28, 2008) (unpublished); Brown v. Triboro Coach Corp., 153 F. Supp. 2d 172, 185 (E.D. N.Y. 2001). It is difficult to fathom how Grubb could instruct future pilots with confidence, or receive training on how to do so, if he was repeatedly "nodding off." Furthermore, in this analysis, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). After eighteen months of counseling and warnings, there could be no reasonable doubt, either to the casual observer or to Grubb, where SWA stood on the matter.

Of course, the inquiry does not stop with Grubb; the court must also look at whether SWA met its accommodation obligations. "It is the plaintiff's burden to request reasonable accommodations." Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007). The only cited accommodation that Grubb requested that was not granted was the set shift assignment request reflected in the April

26, 2004 doctor's note. Leaving aside that the note did not specify any condition, but only that Grubb "is a patient in our clinic," SWA's training director testified, without any evidence to the contrary, that the request would impose inordinate burdens on other SWA employees and require SWA to "fundamentally alter" its schedules. See Foreman v. Babcok & Wilcox Co., 117 F.3d 800, 809–10 (5th Cir. 1997) (holding that accommodation does not require imposing disparate burdens on others). Furthermore, given that SWA's repeated offers and provisions of assistance, including time off for treatment, failed to resolve the matter for over a year and a half, the likelihood of further reasonable accommodations rendering Grubb able to do his job is slim. See Rogers, 87 F.3d at 759–60 ("[R]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job . . . ."). Thus, not only is Grubb not a "qualified individual," but SWA also provided any accommodation it may have owed him in any event.

Turning to the discrimination aspect of the district court's ADA holding, Grubb has conceded any appeal on this ground by repeatedly asserting that his claim is limited to accommodation. Thus, it is unnecessary to proceed further with this aspect of the district court's opinion.

B. The FMLA Claim

In his complaint, Grubb claims that his "wrongful termination violated the [FMLA] in that [he] was an eligible employee for the leave and benefits under the act and he was seeking to have time to treat a serious medical condition." Treating this claim largely as one for FMLA retaliation or discrimination based on one's status as an FMLA applicant, the district court granted summary judgment to SWA because it found that Grubb did not offer enough evidence of

a causal link between any leave and his termination, and he could not rebut the legitimate reasons set forth by SWA for its decision. Grubb focuses his appeal on the argument that the district court used the wrong framework by analyzing his claim as a retaliation rather than entitlement claim. Nevertheless, he appeals the denial of his claim on both retaliation and entitlement grounds. As described below, we find that (1) although the district court may have erred in finding that Grubb did not make out a prima facie case on retaliation, it did not err in rejecting his claim because he could not rebut the legitimate reasons for his termination, and (2) any claim to entitlement is also subject to dismissal on summary judgment, whether or not the district court so ruled.

In assessing Grubb's FMLA claim as a claim for leave-based retaliation or discrimination, the district court used a "mixed motive" analysis. That analysis, which permits a finding of discrimination despite the co-existence of legitimate motives, was developed by the Supreme Court in evaluating indirect evidence cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Desert Palace, 539 U.S. at 98–102. It has since been extended by this court to FMLA retaliation cases. See Richardson, 434 F.3d at 332–33. It is not clear if Grubb argues for a "mixed motive" analysis or the more restrictive sole motive test of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See Richardson, 434 F.3d at 332–33 (using Desert Palace for "mixed motive" and McDonnell-Douglas for "sole" reason cases). Nevertheless, his claim fails on either theory because although he may be able to show a prima facie case, which is required under both tests, he cannot show that leave was a reason for his firing—which is required even under the less restrictive "mixed motive" test. See id. at 333.

Under the FMLA, a covered employer—and it is undisputed that SWA is one—may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA leave] right," or otherwise "discriminate against any individual for opposing any [FMLA-prohibited] practice." 29 U.S.C. § 2615(a). To survive summary judgment in the pursuit of violations of the foregoing in an indirect evidence case, a plaintiff must first establish a prima facie case. As such, he must show: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave . . . or the adverse decision was made because he sought protection under the FMLA." Mauder v. Metro. Transit Auth. of Harris County, Tex., 446 F.3d 574, 583 (5th Cir. 2006).

As to the first element of the prima facie case, there may be enough of an issue of fact as to whether Grubb had a "serious health condition" for purposes of FMLA "protection" in seeking leave to survive summary judgment. See Hurlbert v. St. Mary's Health Care Sys., 439 F.3d 1286, 1298 (11th Cir. 2006). The regulations provide that a "serious health condition" exists where one has an illness and is under the care of a health care provider after a "period of incapacity" of "more than three days." 29 C.F.R. § 825.114. Although it does not appear that Grubb's condition was particularly acute when he sought leave or that his FMLA application reached the point of showing how he would use the leave, his apparent three and a half week treatment in March of 2004 (which he claims was a "hospitaliz[ation]") followed by continued physician care may raise an issue of fact. See Hurlbert, 439 F.3d at 1298.

Obviously, Grubb suffered an adverse employment action by virtue of his termination. Thus, the only remaining prima facie issue is whether his firing

11

"was made because he sought protection under the FMLA." Mauder, 446 F.3d at 583. As a prima facie element, this third prong is not an ultimate showing of liability, but merely determines whether there is enough evidence to require an employer to respond. See Burdine, 450 U.S. at 253–54 (observing that the burden is "not onerous" and only creates a "presumption"). All that is required is "a causal connection between the protected activity and the discharge." Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999). The timing of Grubb's June 21 termination shortly after the raising of his possible pursuit of leave in the June 9 meeting with supervisors is likely sufficient. See Mauder, 446 F.3d at 583 (emphasizing "temporal proximity" in the prima facie context).

Based on the foregoing, the district court likely erred when it found that Grubb did not have a prima facie case. Yet, even if Grubb can show a prima facie case, SWA has the opportunity to articulate—though not necessarily prove, see Burdine, 450 U.S. at 250—a legitimate non-discriminatory reason for its action. Grubb must then rebut this articulation by providing enough evidence to create a genuine issue of material fact that discrimination was nevertheless present. See Richardson, 434 F.3d at 333. It is on these post-prima facie elements where Grubb's claim for FMLA retaliation ultimately fails.

First, there is no doubt that SWA met its burden of simply articulating a legitimate non-discriminatory reason for its decision—i.e., performance. See Hicks, 509 U.S. at 509 (noting that the defendant's burden is production, not proof, and "involve[s] no credibility assessment"). Second, the only arguments that Grubb sets forth to assert that SWA acted because of FMLA leave—i.e., a two-day firing delay under the labor agreement and the intervening timing of his application—are insufficient. Failure to follow internal procedures is generally

not enough to create a genuine issue of fact as to discriminatory motives. See Moore v. Eli Lilly & Co., 990 F.2d 812, 819 (5th Cir. 1993). Further, speculation from the timing of Grubb's FMLA application and his firing is also not enough, particularly in light of an eighteen month record of warnings and performance problems that were understood by Grubb as possibly leading to his termination and the uncontested testimony that SWA's decision to terminate arose independently of FMLA leave. See Jarjoura v. Ericsson, Inc., 266 F. Supp. 2d 519, 531 (S.D. Tex. 2003), aff'd, 82 F. App'x 998 (5th Cir. 2003) (unpublished) ("[T]iming alone is not enough to support retaliation . . . ."); see also Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997) ("[One] cannot merely rely on his subjective belief that discrimination occurred . . . ."). In short, even if Grubb can show that his efforts to seek FMLA leave are protected, he lacks evidence to demonstrate that such efforts led to SWA's decision to fire him.

The final argument on appeal is one that the district court did not address, namely whether Grubb's termination violated the FMLA by effectively denying him leave to which he would have been entitled. Given its finding in support of the firing in general, the district court did not go on to deal directly with any claim to entitlement. Nevertheless, "the FMLA contains two distinct provisions." Mauder, 446 F.3d at 580. One—which was explored by the district court and discussed above—is a "proscriptive" provision that "protects employees from retaliation or discrimination for exercising their rights under the FMLA." Id. The other is a "prescriptive" provision that "creates a series of entitlements or substantive rights." Id. Among these FMLA entitlements is the leave that Grubb sought for his sleep apnea before being terminated. See 29 U.S.C. § 2612(a)(1)(D) (providing up to twelve weeks of annual leave for a "serious health

condition"). Although there may be an issue of fact as to whether Grubb suffered from a "serious health condition" for the reasons noted above, SWA's otherwise proper termination precludes entitlement to leave.

As a general proposition, "[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave." Serio v. Jojo's Bakery Rest., 102 F. Supp. 2d 1044, 1051 (S.D. Ind. 2000). This principle is not only reflected in FMLA regulations on reinstatement, see 29 C.F.R. § 825.216(a), but is also a matter of common sense. See Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005) (describing as "uncluttered logic" its holding that "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights"). Moreover, at least for purposes of the FMLA—if not the ADA—one can be fired for poor performance even if that performance is due to the same root cause as the need for leave. See McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1108 (10th Cir. 2002) (observing that "the FMLA does not protect an employee from performance problems caused by the condition for which FMLA leave is taken"). Therefore, given that SWA's termination of Grubb was otherwise appropriate, any right to leave would have been extinguished by SWA's exercise of that prerogative.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment to SWA on both the ADA and FMLA claims filed by Grubb.